# UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF ALABAMA
### WESTERN DIVISION

| | | |
|---|---|---|
| **KENNETH WAYNE RICE,** | } | |
| | } | |
| **Plaintiff,** | } | |
| | } | |
| **v.** | } | **Case No.:  7:17-cv-00732-RDP** |
| | } | |
| **SETERUS, INC., et al.,** | } | |
| | } | |
| **Defendants.** | } | |

## <u>MEMORANDUM OPINION</u>

This case is before the court on Defendant JPMorgan Chase Bank, N.A.'s ("Chase") Motion to Dismiss Plaintiff's Amended Complaint (Doc. # 30) and Defendants Seterus, Inc., Federal National Mortgage Association ("Fannie Mae"), and Mortgage Electronic Registration Systems, Inc.'s ("MERS") Motion to Dismiss Plaintiff's Amended Complaint (Doc. # 33).  The Motions to Dismiss are fully briefed and under submission.  (Docs. # 39-42).  After careful review, and for the reasons explained below, the court concludes that Defendants' Motions to Dismiss are due to be granted in part and denied in part.

## I.    Background

This case concerns a mortgage on Plaintiff's residence and whether Defendants violated the terms of a settlement agreement -- as well as several federal statutes -- while servicing the mortgage and conducting foreclosure proceedings.  Plaintiff's Amended Complaint (Doc. # 22) asserts the following claims:

1.    Count One—Negligence

2.    Count Two—Wantonness

3. Count Three—Unjust Enrichment

4. Count Four—Wrongful Foreclosure

5. Count Five—Slander of Title

6. Count Six—Breach of Contract

7. Count Seven—Fraud

8. Count Eight—Placed in a False Light

9. Count Nine—Defamation, Libel, and Slander

10. Count Ten—Violations of the Truth in Lending Act ("TILA")

11. Count Eleven—Violations of the Real Estate Settlement Procedures Act ("RESPA")

12. Count Twelve—Violations of the Fair Credit Reporting Act ("FCRA")

13. Count Thirteen—Violations of the Fair Debt Collection Practices Act ("FDCPA")

14. Count Fourteen—Claim for Declaratory Relief

(Doc. # 22). Defendants move for dismissal of all of the claims, except for the breach-of-contract, FDCPA, and declaratory relief claims.

## II.    The Amended Complaint's Allegations

According to his Amended Complaint, in June 2007, Plaintiff purchased property located at 3813 East Second Avenue, Tuscaloosa, Alabama 35405 (the "Property") for approximately $122,700.00. (Doc. # 22 at ¶ 5). Plaintiff financed the purchase with a loan from Mortgage America, Inc. (*Id.*). Defendant MERS obtained the mortgage instrument on behalf of Mortgage America. (*Id.*). In 2008, Cenlar began servicing Plaintiff's mortgage. (*Id.* at ¶ 7).

In April 2008, Plaintiff filed a Chapter 13 bankruptcy petition. (*Id.* at ¶ 9). Cenlar filed a proof of claim with the bankruptcy court and received payments pursuant to Plaintiff's bankruptcy plan. (*Id.*). In September 2010, while Plaintiff remained under the protection of the

bankruptcy plan, Defendant Chase commenced servicing of the loan. (*Id.* at ¶¶ 7, 9). Plaintiff challenges the validity of the mortgage assignment to Chase. (*See id.* at ¶ 7 & n. 1). In August 2011, Plaintiff received a bankruptcy discharge. (*Id.* at ¶ 10).

In September 2011, Chase allegedly sent Plaintiff a notice of default for failing to tender mortgage payments that were actually paid by a bankruptcy trustee. (*Id.*). Plaintiff continued to send monthly payments to Chase, but it responded with more default notices. (*Id.* at ¶ 11). In January 2013, Chase commenced foreclosure proceedings on the Property, which Plaintiff contested as invalid. (*Id.* at ¶ 13). Plaintiff filed a lawsuit to stop the foreclosure sale in January 2014. (*Id.* at ¶ 14). That lawsuit was removed to federal court. (*Id.*). In May 2015, after the removal and engaging in subsequent litigation, Plaintiff and Defendant Chase entered into a formal settlement agreement resolving the claims brought in that suit. (*Id.* at ¶ 15). Pursuant to the settlement agreement, Chase agreed "to bring [Plaintiff's] account current for the month of June 2015." (*Id.* at ¶ 16).

Plaintiff alleges that Defendant Chase violated the terms of the settlement agreement. (*Id.*). Although Plaintiff resumed his mortgage payments, Chase did not accept them and sent them back to him. (*Id.* at ¶ 17). Chase sent Plaintiff demands for additional payments in May, June, July, August, and September 2015 – payments that Plaintiff contends were not owed under the settlement agreement. (*Id.* at ¶ 18). Plaintiff also asserts that Chase sent written communications to Plaintiff in May, June, July, August, and September 2015 which reflected incorrect amounts due on the mortgage account. (*Id.*). Plaintiff asked Chase for "a detailed explanation of the escrow fees and an escrow analysis of his account," but Chase failed to provide the requested information. (*Id.* at ¶ 19). Moreover, Plaintiff notified Chase that it was violating the settlement agreement and that its communications to him misstated the debt he

owed, in violation of the RESPA and the FDCPA. (*Id.*). In August 2015, Chase allegedly increased Plaintiff's monthly payment from $1,100 per month to over $2,200 per month. (*Id.* at ¶ 20). In August 2015, December 2015, and January 2016, Plaintiff sent Chase Qualified Written Requests ("QWR") under the RESPA, but it did not respond to the QWRs. (*Id.* at ¶¶ 21, 112).

In February 2016, Defendant Seterus began servicing Plaintiff's mortgage. (*Id.* at ¶ 22). It allegedly relied on Chase's records regarding the mortgage loan, which incorrectly reflected that the account was in default status. (*Id.*). Defendant Seterus immediately sent default notices to Plaintiff and accelerated the mortgage loan. (*Id.* at ¶ 23). Plaintiff informed Seterus that Chase had failed to fix errors in the mortgage loan records, but Seterus refused to correct those errors. (*Id.* at ¶ 24). In November 2016, Defendants Seterus and Fannie Mae began foreclosure proceedings on the Property. (*Id.* at ¶ 25). Plaintiff alleges that the foreclosure proceedings were improper because Defendants "refused to engage in a legitimate and good faith mortgage foreclosure avoidance workout, [refused to] accept the proper payments, inflated the amount due, and [ ] threatened to foreclose on Plaintiff[ ] without any basis to do so." (*Id.*). Plaintiff also alleges that he sent QWRs to Seterus in February 2016, May 2016, November 2016, January 2017, and February 2017. (*Id.* at ¶ 112).

During the foreclosure proceedings, notices were published in the Tuscaloosa News that allegedly contained false information about the default. (*See id.* at ¶¶ 26-27). Inaccurate information about the default also was reported to the national credit bureaus, which Plaintiff asserts damaged his credit record. (*Id.* at ¶ 28). Several neighbors approached Plaintiff and asked him about the foreclosure sale, which they learned about from the sale notices. (*Id.* at ¶ 29). Several of Plaintiff's clients also asked him about the foreclosure sale, and some of those

clients stopped doing business with him thereafter.  (*Id.*).  Plaintiff sent a letter disputing the debt to the firm handling the foreclosure in February 2017, along with the QWR he sent to Seterus. (*Id.* at ¶ 30).

Plaintiff alleges that Defendant wrongfully accelerated the mortgage loan and wrongfully commenced foreclosure proceedings.  (*Id.* at ¶¶ 32-33).  He contests the standing of Defendants Seterus and Fannie Mae to conduct foreclosure proceedings.  (*Id.* at ¶ 33).  Notably, Plaintiff has not alleged in the Amended Complaint that any Defendant completed a foreclosure sale of the Property.

## III.    Standard of Review

The Federal Rules of Civil Procedure require that a complaint provide "a short and plain statement of the claim showing that the pleader is entitled to relief."  Fed. R. Civ. P. 8(a)(2). However, the complaint must include enough facts "to raise a right to relief above the speculative level."  *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007).  Pleadings that contain nothing more than "a formulaic recitation of the elements of a cause of action" do not meet Rule 8 standards, nor do pleadings suffice that are based merely upon "labels and conclusions" or "naked assertion[s]" without supporting factual allegations.  *Id.* at 555, 557.  In deciding a Rule 12(b)(6) motion to dismiss, courts view the allegations in the complaint in the light most favorable to the non-moving party.  *Watts v. Fla. Int'l Univ.*, 495 F.3d 1289, 1295 (11th Cir. 2007).

To survive a motion to dismiss, a complaint must "state a claim to relief that is plausible on its face."  *Twombly*, 550 U.S. at 570.  "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged."  *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).  Although "[t]he

plausibility standard is not akin to a 'probability requirement,'" the complaint must demonstrate "more than a sheer possibility that a defendant has acted unlawfully." *Id.* A plausible claim for relief requires "enough fact[s] to raise a reasonable expectation that discovery will reveal evidence" to support the claim. *Twombly*, 550 U.S. at 556.

In considering a motion to dismiss, a court should "1) eliminate any allegations in the complaint that are merely legal conclusions; and 2) where there are well-pleaded factual allegations, 'assume their veracity and then determine whether they plausibly give rise to an entitlement to relief.'" *Kivisto v. Miller, Canfield, Paddock & Stone, PLC*, 413 F. App'x 136, 138 (11th Cir. 2011) (quoting *Am. Dental Ass'n v. Cigna Corp.*, 605 F.3d 1283, 1290 (11th Cir. 2010)). That task is context specific and, to survive the motion, the allegations must permit the court based on its "judicial experience and common sense . . . to infer more than the mere possibility of misconduct." *Iqbal*, 556 U.S. at 679. If the court determines that well-pleaded facts, accepted as true, do not state a claim that is plausible, the claims are due to be dismissed. *Twombly*, 550 U.S. at 570.

## IV.    Analysis

Defendants contest the sufficiency and legal viability of all but three of the claims in the Amended Complaint. Because some of the claims are brought against all Defendants and others are brought against certain Defendants, the court addresses Defendants' challenges to each claim, in turn.

### A.    Plaintiff's Negligence and Wantonness Claims (Counts One and Two) are Not Cognizable Under Alabama Law

Plaintiff brings negligence and wantonness claims against all Defendants for negligently and wantonly servicing his account, attempting to collect funds not owed, causing his property insurance to be cancelled, declaring that his mortgage loan was in default status, and attempting

to complete a foreclosure sale. (Doc. # 22 at ¶¶ 41, 45). Moreover, Plaintiff claims that Defendants negligently and wantonly failed to prevent the dissemination of inaccurate and libelous information to others, including the credit bureaus and the general public. (*Id.*). Finally, Plaintiff complains that Defendants negligently and wantonly trained and supervised the employees responsible for his mortgage account. (*Id.*). Defendants contend that the negligence and wantonness claims fail as a matter of law because "claims for negligent and wanton loan servicing are simply not actionable under Alabama law." (Docs. # 30 at 4-5; 33 at 6-8). The court agrees with Defendants that the negligence and wantonness claims fail as a matter of law.

"To establish negligence, [a] plaintiff must prove: (1) a duty to a foreseeable plaintiff; (2) a breach of that duty; (3) proximate causation; and (4) damage or injury." *Martin v. Arnold*, 643 So. 2d 564, 567 (Ala. 1994) (quoting *Albert v. Hsu*, 602 So. 2d 895, 897 (Ala. 1992)). "To establish wantonness, [a] plaintiff must prove that the defendant, with reckless indifference to the consequences, consciously and intentionally did some wrongful act or omitted some known duty. To be actionable, that act or omission must proximately cause the injury of which the plaintiff complains." *Id.* "To establish a claim for negligent, reckless or wanton supervision, a plaintiff must show that '(1) the employee committed a tort recognized under Alabama law, (2) the employer had actual notice of this conduct or would have gained such notice if it exercised due and proper diligence, and (3) the employer failed to respond to this notice accurately.'" *Shuler v. Ingram & Assocs.*, 710 F. Supp. 2d 1213, 1227-28 (N.D. Ala. 2010) (quoting *Edwards v. Hyundai Motor Mfg. Ala., LLC*, 603 F. Supp. 2d 1336, 1357 (M.D. Ala. 2009)), *aff'd*, 441 F. App'x 712 (11th Cir. 2011).

Counts One and Two of the Complaint fail to state a viable claim because Alabama law "does not recognize a tort-like cause of action for the breach of a duty created by contract."

*McClung v. MERS, Inc.*, 2012 WL 1642209, at *7-8 (N.D. Ala. May 7, 2012) (quoting *Blake v. Bank of Am., N.A.*, 845 F. Supp. 2d 1206, 1210 (M.D. Ala. 2012)). "[A] negligent failure to perform a contract . . . is but a breach of the contract." *Id.* at *7 (quoting *Blake*, 845 F. Supp. 2d at 1210). *See also Barber v. Bus. Prods. Ctr., Inc.*, 677 So. 2d 223, 228 (Ala. 1996), ("a mere failure to perform a contractual obligation is not a tort"), *overruled in part on other grounds by White Sands Grp., L.L.C. v. PRS II, LLC*, 32 So. 3d 5 (Ala. 2009). "A tort claim can only be assessed when the duty of reasonable care, which one owes to another in the course of day-to-day affairs, has been breached and causes personal injury or property damages." *McClung*, 2012 WL 1642209, at *7. It follows that Alabama law "does not recognize a cause of action for negligent or wanton mortgage servicing." *Id.* at *8 (dismissing the plaintiff's claim for negligent, careless, and wanton mortgage servicing) (citing *Blake*, 845 F. Supp. 2d at 1210); *U.S. Bank Nat'l Ass'n v. Shepherd*, 202 So. 3d 302, 314-15 (Ala. 2015) (holding that wantonness claims for servicing and handling mortgages are improper because the underlying duties are established by contract).

Any obligations Defendants owed to Plaintiff arose from the mortgage agreement, note, and settlement agreement between Plaintiff and Defendant Chase pertaining to the mortgage account. These obligations do not give rise to a duty of reasonable care generally owed to members of the public. Accordingly, because the duties Plaintiff contends Defendants breached are based on contractual agreements, Plaintiff's negligence and wantonness claims are not legally cognizable under Alabama law. *Shepherd*, 202 So. 3d at 314-15. Plaintiff presents negligent training and supervision allegations in Counts One and Two, but those claims appear to be entirely based on the employees' negligent servicing, handling, and investigation of the mortgage account. (*See* Doc. # 22 at ¶¶ 41, 45). Because the underlying negligence and

wantonness claims fail as a matter of law, it follows that Plaintiff's claims for negligent and wanton training and supervision fail because the only Alabama tort claims underlying those causes of action are the non-cognizable negligent and wanton servicing claims. *See Costine v. BAC Home Loans*, 946 F. Supp. 2d 1224, 1235 (N.D. Ala. 2013) (dismissing similar negligent hiring and training claims).

Plaintiff appears to argue in his opposition briefs that Defendants are liable under Alabama law for violating their duties owed to him under the TILA and the RESPA. (*See* Doc. # 40 at 18-19). This argument misses the mark. As explained below, in the context of a mortgage loan, the TILA and the RESPA both create statutory duties for companies initiating, servicing, and handling mortgage loans. The Alabama Supreme Court has explicitly rejected negligence and wantonness claims premised on duties arising "with regard to servicing and handling mortgages." *Shepherd*, 202 So. 3d at 314-15. *See also Gregory v. Select Portfolio Servicing, Inc.*, 2016 WL 4540891, at *9 (N.D. Ala. Aug. 31, 2016) (rejecting the argument that a negligent loan servicing claim can be premised on duties created by the RESPA). Thus, the court concludes that neither the alleged TILA violations nor the alleged RESPA violations can give rise to a negligence or wantonness action under Alabama law. Accordingly, Plaintiff's negligence and wantonness claims are due to be dismissed.

**B.      Plaintiff's Unjust-Enrichment Claim (Count Three) is Due to Proceed as an Alternative Theory of Relief**

According to the Amended Complaint, Defendants Chase, Fannie Mae, and Seterus were unjustly enriched by the attempted foreclosure because they obtained "fees, insurance proceeds, and equity in the [Property]." (Doc. # 22 at ¶ 51). Defendants primarily argue that the unjust-enrichment claim fails because a valid contract existed between the parties. (Docs. # 30 at

6-7; 33 at 8-9). Plaintiff has offered no response to that argument but argues that the Defendants hold money that was improperly paid to them. (*See* Docs. # 39 at 21-22; 40 at 21-22).

"The doctrine of unjust enrichment is an old equitable remedy permitting the court in equity and good conscience to disallow one to be unjustly enriched at the expense of another." *Flying J Fish Farm v. Peoples Bank of Greensboro*, 12 So. 3d 1185, 1193 (Ala. 2008) (emphasis and internal quotation marks omitted). "It does not generally apply where there is an express contract between the parties governing the same subject matter." *Rice v. JPMorgan Chase Bank, N.A.*, 2014 WL 3889472, at *11 (N.D. Ala. Aug. 5, 2014) (citing *Kennedy v. Polar-BEK & Baker Wildwood P'ship*, 682 So. 2d 443, 447 (Ala. 1996)). Notably, however, Plaintiff alleges in his Statement of Facts that the alleged assignments of the mortgage from Mortgage America, Inc. to other entities were invalid. (Doc. # 22 at ¶ 7). Therefore, while the Amended Complaint alleges a breach-of-contract claim concerning the Property's mortgage, Plaintiff has also alleged (as an alternative theory of relief) that Defendants never lawfully obtained an interest in the mortgage and, thus, were unjustly enriched by the servicing of the mortgage and the attempted foreclosure. The court concludes that this claim is not due to be dismissed at this stage of the proceedings.

### C.  Plaintiff's Wrongful-Foreclosure Claim (Count Four) Fails Because He Has Not Pled that a Foreclosure Sale Occurred

Plaintiff raises a wrongful-foreclosure claim based on the wrongful initiation of foreclosure proceedings and the attempted foreclosure sale in February 2017. (Doc. # 22 at ¶¶ 54-57). As mentioned above, Plaintiff has not alleged that any Defendant actually exercised a power of sale or that a foreclosure sale of the Property occurred. Defendants argue that the wrongful-foreclosure claim is due to be dismissed because Plaintiff has not alleged that a foreclosure sale occurred. (*E.g.*, Doc. # 33 at 9-10). The court agrees.

"Alabama has long recognized a cause of action for 'wrongful foreclosure' arising out of the exercise of a power-of-sale provision in a mortgage." *Jackson v. Wells Fargo Bank, N.A.*, 90 So. 3d 168, 171 (Ala. 2012) (defining a wrongful-foreclosure claim where "a mortgagee uses the power of sale given under a mortgage for a purpose other than to secure the debt owed by the mortgagor"). "The touchstone of such a claim is that the mortgagee must 'use[ ] the power of sale.'" *Selman v. CitiMortgage, Inc.*, 2013 WL 838193, at *7 (S.D. Ala. Mar. 5, 2013) (quoting *Reeves Cedarhurst Development Corp. v. First Am. Fed. Sav. & Loan Ass'n*, 607 So. 2d 180, 182 (Ala. 1992)). Accordingly, a foreclosure sale must have occurred in order for a plaintiff to present a viable wrongful-foreclosure claim. *Id.*; *McClung*, 2012 WL 1642209, at *3 ("Alabama law prohibits wrongful foreclosure claims prior to a foreclosure sale; therefore, Plaintiffs cannot support a claim for wrongful foreclosure here."). Here, because Plaintiff has not pled that a foreclosure sale of the Property occurred, his wrongful-foreclosure claim fails as a matter of law and is due to be dismissed.

### D. Plaintiff's Slander-of-Title Claim (Count Five) Fails to Plead Defendants' Malice or the Special Damages He Suffered

Count Five of the Amended Complaint asserts a slander-of-title claim against Defendants Fannie Mae, MERS, and Seterus. (Doc. # 22 at ¶¶ 58-60). Defendants argue that Plaintiff fails to plead facts establishing malice, disparagement of property, or special damages. (Doc. # 33 at 10-12). Plaintiff responds that Defendants maliciously slandered his title to the Property because "he was the fee simple owner of the property and . . . Defendants published in the newspaper that [they were] foreclosing on said property." (Doc. # 39 at 23-24).

The elements of slander of title under Alabama law are:

(1) Ownership of the property by plaintiff; (2) falsity of the words published; (3) malice of defendant in publishing the false statements; (4) publication to some person other than the owner; (5) the publication must be in disparagement of

plaintiff's property or the title thereof; and (6) that special damages were the proximate result of such publication (setting them out in detail).

*Merchants Nat. Bank of Mobile v. Steiner*, 404 So. 2d 14, 21 (Ala. 1981) (quoting *Womack v. McDonald*, 121 So. 57, 59 (1929)).  For purposes of such a slander claim, malice may be proven with evidence that the defendant "intentionally disparaged the plaintiff's title" or "['']recklessly disparaged it without information sufficient to support a bona fide belief' in the veracity of the disparaging statement."  *Roden v. Wright*, 646 So. 2d 605, 611 (Ala. 1994) (internal modifications and emphases omitted) (quoting *Harrison v. Mitchell*, 391 So. 2d 1038, 1041 (Ala. Civ. App. 1980)).  To plead special damages, a plaintiff must claim that the slanderous publication interrupted or injured a "dealing of the plaintiff with his property" or that he or she incurred expenses to remedy the injurious effect of the slander.  *Prickett v. BAC Home Loans*, 946 F. Supp. 2d 1236, 1244 (N.D. Ala. 2013) (quoting *Ebersole v. Fields*, 62 So. 73, 75 (Ala. 1913)).

Here, as an initial matter, the court notes that Plaintiff's Amended Complaint wholly fails to identify which allegations show Defendants' malice in publishing the foreclosure notice.  (*See* Doc. # 22 at ¶¶ 58-60).  Although Plaintiff alleges that Seterus and Fannie Mae began foreclosure proceedings when it knew that Plaintiff contested the validity of the foreclosure (*id.* at ¶ 25), Plaintiff has not stated that Defendants intentionally published false information about the status of the Property.  (*See id.* at ¶¶ 25-27, 58-60).  Nor has Plaintiff alleged facts to plausibly show that any Defendant acted recklessly in believing that the mortgage was in default and the Property was subject to foreclosure.  Because Plaintiff has failed to plead facts plausibly showing Defendants' malice in disseminating notices of the foreclosure sale, his slander-of-title claim is due to be dismissed.

Alternatively, even if Plaintiff pled facts supporting malice (and, to be clear, he has not), his slander-of-title claim is due to be dismissed because he has not specified the damages he suffered. Alabama law requires a plaintiff to distinctly set out the special damages suffered from the slander. *Steiner*, 404 So. 2d at 21; *Prickett*, 946 F. Supp. 2d at 1244 (quoting *Ebersole*, 62 So. at 75). Plaintiff's damages allegation in paragraph 60 of the Amended Complaint does not aver that he suffered the types of damages described in *Prickett*. (Doc. # 22 at ¶ 60). Moreover, Plaintiff's averment that the foreclosure sale notice "caused a cloud to be placed on the title of the [P]roperty" (Doc. # 22 at ¶ 59) is a general allegation of damages that comes nowhere close to pleading the type of special damages required for a viable slander-of-title action. *See Bush v. J.P. Morgan Chase Bank, N.A.*, 2016 WL 324993, at *11 (N.D. Ala. Jan. 27, 2016) (dismissing a slander of title claim with nearly identical "cloud of title" allegations). Because Plaintiff's Amended Complaint fails to plausibly plead the elements of malice and special damages, his slander-of-title claim fails as a matter of law and is due to be dismissed.

### E.     Plaintiff's Fraud Claim (Count Seven) Does Not Meet the Heightened Standard for Fraud Claims

In Count Seven of the Amended Complaint, Plaintiff claims that all Defendants committed fraud. (Doc. # 22 at ¶¶ 74-78). The Amended Complaint offers this description of the misrepresentations underlying the fraud count:

> The Defendant misrepresented that the loan was in default. Further, the Defendant made false and misleading representations, to wit: dissemination of inaccurate information regarding the loan account as being in default and dissemination of inaccurate information regarding the credit history and credit of the Plaintiff that was known to be false.

(*Id.* at ¶ 75). He claims that he executed the mortgage loan as a result of the fraudulent misrepresentations. (*Id.* at ¶ 77). Defendants challenge the fraud count on the grounds that it

offers no specifics about the circumstances of the fraud and no plausible reliance allegation. (Docs. # 30 at 7-8; 33 at 12-14). The court agrees with Defendants on both grounds.

Federal Rule of Civil Procedure 9(b) requires a party pleading fraud to "state with particularity the circumstances constituting fraud or mistake." To plead a viable fraud claim, a complaint must state:

> (1) precisely what statements were made in what documents or oral representations or what omissions were made, and (2) the time and place of each such statement and the person responsible for making (or, in the case of omissions, not making) same, and (3) the content of such statements and the manner in which they misled the plaintiff, and (4) what the defendants obtained as a consequence of the fraud.

*Ziemba v. Cascade Int'l, Inc.*, 256 F.3d 1194, 1202 (11th Cir. 2001).

Here, Plaintiff's Amended Complaint wholly fails to state which communications form the basis for his fraud claim. (*See* Doc. # 22 at ¶ 75). Given the number of communications described in the Amended Complaint (and Plaintiff's failure to point out specific fraudulent communications in his opposition briefs), Plaintiff's incorporation of the Amended Complaint's Statement of Facts into the fraud count (*id.* at ¶ 74) cannot be considered a precise identification of the statements forming the basis of his fraud count. Additionally, the court observes that Defendant Chase pointed out this problem with the original Complaint in its Motion for a More Definite Statement, but Plaintiff has not expanded on the fraud count's allegations in the Amended Complaint. (*See* Doc. # 6 at 6 n. 3). Accordingly, because the Amended Complaint does not specify which precise statements or omissions were fraudulent misrepresentations, Plaintiff's fraud count is due to be dismissed.

In addition, Plaintiff's Amended Complaint fails to explain how he relied on the misstatements to his detriment. Plaintiff claims that he "proceeded with the execution of the loan" because of Defendants' misstatements, but the Amended Complaint states that he agreed to

the mortgage loan in 2007, several years before the communications that appear to form the basis of the fraud count. (*See* Doc. # 22 at ¶¶ 5, 75 77). Thus, as a matter of logic and law, the misstatements presented by Plaintiff could not have led him to execute the mortgage loan. Accordingly, Plaintiff's fraud count is also due to be dismissed for its implausible reliance allegation.

**F.      Plaintiff's False-Light Claim (Count Eight) Fails to State a Claim for Relief**

In Count Eight of the Amended Complaint, Plaintiff claims that Defendants Fannie Mae and Seterus made inaccurate reports to "the national media and to his homeowner insurance carrier." (Doc. # 22 at ¶¶ 79-84). Defendants argue that the false-light invasion-of-privacy claim fails because the allegedly false statements were only published to a single person or a small group of persons. (Doc. # 33 at 16-17). Plaintiff offers no specific argument in response to Defendants' arguments. (Doc. # 39 at 26-27). After careful review, the court agrees that this claim is due to be dismissed.

For an invasion-of-privacy claim based on placing the plaintiff in a false light, a plaintiff must show that the defendant (1) "gave publicity to a matter" concerning the plaintiff, (2) placed the plaintiff in a "false light" that would be highly offensive to a reasonable person, and (3) did so with knowledge that the publicized matter was false or with reckless disregard to its truth or falsity. *Regions Bank v. Plott*, 897 So. 2d 239, 244 (Ala. 2004) (quoting *Butler v. Town of Argo*, 871 So. 2d 1, 12 (Ala. 2003)). Unlike a defamation claim, falsity is an element of a false-light claim and must be proven by the plaintiff. *Id.* Moreover, a false-light defendant must communicate the matter at issue to the public at large "or to so many persons that the matter must be regarded as substantially certain to become one of public knowledge." *Id.* at 245 (emphases omitted) (quoting *Ex parte Birmingham News, Inc.*, 778 So. 2d 814, 818 (Ala. 2000)).

For example, the Alabama Supreme Court has held that statements to two presenting banks and two merchants that an account holder lacked sufficient funds to satisfy certain checks does not constitute publicizing a matter for purposes of a false-light claim. *Id.*

Here, Defendants seek dismissal of the false-light claim because it is premised on furnishing information to small groups of individuals – *i.e.*, credit reporting bureaus and a home insurance carrier. (Doc. # 33 at 17). To the extent Plaintiff's false-light claim is based on statements to the credit bureaus and home insurance carrier, the court agrees that Defendants did not publicize the matter of Plaintiff's default to a degree sufficient to meet the publicity element of a false-light claim. *Cf. Plott*, 897 So. 2d at 245 (holding that publication of information to two banks and two merchants was insufficient to show that the defendant publicized false information). *See also Jackson v. Bank of Mellon*, 2016 WL 4942085, at *10 (S.D. Ala. July 19, 2016) (recommending, in an action filed by Plaintiff's counsel, the dismissal of a similar false-light claim premised on statements made to the "credit reporting media" and an insurance carrier for failure to plead the publicity element), *adopted*, 2016 WL 4942012 (S.D. Ala. Sept. 15, 2016). Moreover, the Amended Complaint cannot be read to provide fair notice of a false-light claim based on the foreclosure sale notices published in the Tuscaloosa News because Plaintiff alleges that the statements underlying the false-light claim were made to the "national media," not the local media or the readership of the Tuscaloosa News. (Doc. # 22 at ¶ 82). And, Plaintiff's Amended Complaint clearly refers to the foreclosure sale notices in the defamation, libel, and slander count. (*See id.* at ¶ 89). Accordingly, the court concludes that Count Eight is due to be dismissed because Plaintiff has not stated facts from which it could be determined that Defendants "gave publicity" to the statements underlying the false-light claim.

Alternatively, even if Plaintiff's Amended Complaint plausibly alleged the publicity element of his false-light claim (and it does not), the false-light claim is due to be dismissed because Plaintiff abandoned it by failing to present any response to Defendants' argument against the claim in his opposition brief. (*See* Doc. # 39 at 26-27). *See also Coalition for the Abolition of Marijuana Prohibition v. City of Atlanta*, 219 F.3d 1301, 1326 (11th Cir. 2000) ("[F]ailure to brief and argue this issue during the proceedings before the district court is grounds for finding that the issue has been abandoned."); *Costine*, 946 F. Supp. 2d at 1321 (concluding that a claim was abandoned where plaintiff failed to respond to an argument against the claim in a motion to dismiss).

### G. Plaintiff's Amended Complaint Sufficiently Pleads Special Damages to Support the Libel Claim (Count Nine)

In Count Nine of the Amended Complaint, Plaintiff claims that Defendants Fannie Mae and Seterus published and communicated defamatory statements that he was in default on the Property's mortgage. (Doc. # 22 at ¶¶ 85-98). Specifically, he alleges that the foreclosure sale notices in the Tuscaloosa News were defamatory and that Fannie Mae and Seterus either knew they were false or recklessly disregarded their potential falsity. (*Id.* at ¶¶ 88-91). Plaintiff pleads reputational damages from Defendants' publication. (*Id.* at ¶ 98).

There are two types of defamation: libel, which involves the use of print media to publish a defamatory comment; and slander, which involves the oral expression of a defamatory comment. *Blevins v. W.F. Barnes Corp.*, 768 So. 2d 386, 390 (Ala. Civ. App. 1999). Because Plaintiff's claim is based on written communications (the foreclosure sale notices), his claim is in reality one for libel, not slander. To prove a communication was defamatory, a plaintiff must present evidence establishing the following elements: (1) a false and defamatory statement concerning the plaintiff; (2) an unprivileged communication of that statement to a third party; (3)

fault amounting to at least negligence on the part of the defendant; and (4) either actionability of the statement irrespective of special harm or the existence of special harm caused by the publication of the statement. *McCaig v. Talladega Pub. Co., Inc.*, 544 So. 2d 875, 877 (Ala. 1989) (citing Restatement (2d) of Torts § 558 (1977)). As opposed to slanderous statements, libelous statements are actionable *per* se, without a showing of special damages, "if they directly tend to prejudice anyone in his office, profession, trade, or business, or in any lawful employment by which he may gain his livelihood."[1] *Kelly v. Arrington*, 624 So. 2d 546, 549 (Ala. 1993). As a general matter, statements "charging nonpayment of debts or insolvency are actionable without special damage being shown[ ] when they refer to merchants, tradesmen, or others in occupations where credit is essential." *Harrison v. Burger*, 103 So. 842, 843-44 (Ala. 1925) (holding that publications accusing the plaintiff of failing to pay a debt were not libel *per se* because the plaintiff did not claim to engage in an occupation where credit was essential). *Cf. Gen. Elec. Credit Corp. v. Alford & Assocs., Inc.*, 374 So. 2d 1316, 1319-20 (Ala. 1979) (concluding that publications to mobile home suppliers about a plaintiff's failures to meet financial obligations were libelous).

As an initial matter, Defendants' argument to dismiss the defamation count rests on a faulty premise: that their statements had to accuse Plaintiff of an indictable offense in order to allow for a defamation *per se* claim. (*See* Doc. # 33 at 18). As explained above, because Count Nine rests on a statement disseminated in published media, Plaintiff can pursue a libel claim without alleging special harm if the foreclosure sale notices would tend to prejudice a person in his profession, trade, or area of employment. *Kelly*, 624 So. 2d at 549. Nevertheless, Plaintiff's

---

[1] Defendants rely on the Southern District of Alabama's dismissal of a defamation claim that failed to allege special damages in *Deneau v. Orkin, LLC*, 2013 WL 2178045, at *18-19 (S.D. Ala. May 20, 2013). The court finds *Deneau*'s defamation claim distinguishable from the defamation claim presented here because the defamation claim in the *Deneau* case was a slander claim premised on oral statements to prospective employers. *See id.*

Amended Complaint offers no indication of what occupation or profession he engaged in when the foreclosure sale notices were published. (*See* Doc. # 22 at ¶¶ 2, 29, 85-98). As such, the court cannot determine whether Defendants' communications about Plaintiff's default would have prejudiced him in an occupation where credit was essential, and Plaintiff cannot proceed on a libel *per se* theory under the standard articulated in *Kelly*. *See Harrison*, 103 So. at 843-44. *See also Chung v. JPMorgan Chase Bank, N.A.*, 975 F. Supp. 2d 1333, 1348-50 (N.D. Ga. 2013) (finding, under Georgia law, that the plaintiff's libel claim for allegedly false publications about a defaulted home mortgage loan could not proceed under a libel *per se* theory because the publications did not attack her ability to conduct her trade or profession). Ultimately, the court agrees with Defendants that Plaintiff must plead special damages to proceed on his libel count. After review, the court concludes he has done so.

Plaintiff's Amended Complaint sufficiently pleads the existence of special damages because he alleges that he lost business clients because of the foreclosure sale notices. (Doc. # 22 at ¶ 29). "Special damages are the material harms that are the intended result or natural consequence of the [defamatory] statement . . ., and the general rule is that they are limited to 'material loss capable of being measured in money,' *Restatement (2d) of Torts* § 575, cmt. b, at 198." *Butler v. Town of Argo*, 871 So. 2d 1, 18 (Ala. 2003) (internal citation omitted) (quoting *Shook v. St. Bede Sch.*, 74 F. Supp. 2d 1172, 1180 (M.D. Ala. 1999)). At the summary judgment stage, a defamation plaintiff who must prove special damages must provide "substantial evidence indicating that he had suffered a material harm, capable of being measured in money damages, as a consequence of [Defendant's] statements." *Casey v. McConnell*, 975 So. 2d 384, 390 (Ala. Civ. App. 2007). Although it is a close call, the court finds that Plaintiff's allegation that he lost business clients due to Defendants' publication of false information that he had defaulted on a

loan constitutes a sufficient allegation of monetary damages that are the natural consequence of an allegedly false statement denigrating Plaintiff's creditworthiness.[2]  Accordingly, the court concludes that Count Nine of the Amended Complaint is not due to be dismissed, to the extent that it rests on the publications of the foreclosure sale notices.[3]

### H.    Plaintiff's TILA Claim (Count Ten) is Time-Barred

In Count Ten of the Amended Complaint, Plaintiff alleges that Defendants violated several provisions of TILA by making inadequate disclosures, charging unauthorized fees, and improperly amortizing the loan.  (Doc. # 22 at ¶¶ 99-109).  Defendants argue that the TILA count fails because neither Chase nor Seterus were Plaintiff's "creditors" with regard to the mortgage loan on the Property.  (Doc. # 30 at 8-10; 33 at 18-20).  Chase also argues that the TILA claims are time-barred.

TILA is a remedial consumer protection statute designed to promote the flow of credit-related information to the consumer.  *See Bragg v. Bill Heard Chevrolet, Inc.*, 374 F.3d 1060, 1065 (11th Cir. 2004) (quoting 15 U.S.C. § 1601(a)).  Like other remedial statutes, "TILA must be construed liberally in favor of the consumer."  *Id.*  TILA requires lenders to provide an array of "clear and accurate disclosures of terms dealing with things like finance charges, annual percentage rates of interest, and the borrower's rights."  *Beach v. Ocwen Fed. Bank*, 523 U.S. 410, 412 (1998); *see also* 15 U.S.C. § 1638. Defendants' argument that they cannot be held liable under the TILA because they are not creditors is without merit, at least at this stage, because "in certain circumstances an assignee may be liable under TILA."  *Rice v. JPMorgan*

---

[2]  Of course, the court states no opinion as to whether Plaintiff will be able to present substantial evidence of special monetary damages at the summary judgment stage or at trial.  *See* Fed. R. Civ. P. 56.

[3]  Because Counts One, Two, and Eight of the Amended Complaint are due to be dismissed for failure to state a claim, the court need not decide (and does not decide) whether those claims are preempted by the FCRA to the extent the claims rely on information furnished to credit bureaus.  The court also need not decide whether Count Nine would have been preempted by the FCRA if it had raised a defamation claim based on communications to a credit bureau because Count Nine is based wholly on the communications in the foreclosure sale notices.

*Chase Bank, N.A.*, 2014 WL 3889472, at *4 (N.D. Ala. Aug 5, 2014). *See generally* 15 U.S.C. § 1641.

On the other hand, the court agrees with Chase that the TILA violations alleged by Plaintiff are time-barred. "Pursuant to § 1640(e), all TILA violations must be brought 'within one year from the date of the occurrence of the violation.'" *Velardo v. Fremont Inv't & Loan*, 298 F. App'x 890, 892 (11th Cir. 2008) (quoting 15 U.S.C. § 1640(e)). A TILA violation occurs when the loan at issue is consummated. *Id.* There is no "continuing violation" under the TILA that extends the statute of limitations. *Id.* (citing *In re Smith*, 737 F.2d 1549, 1552 (11th Cir. 1984)). Plaintiff's TILA count relates to disclosures that the original creditor allegedly failed to make when the mortgage was initiated. (*See* Doc. # 22 at ¶¶ 104, 106-07). But, the mortgage transaction occurred ten years before the filing of this suit, well outside the limitations period.[4] (*Id.* at ¶ 5). While Plaintiff alleges that Defendants Chase and Seterus charged unauthorized fees more recently (*see* Doc. # 40 at 27-28), TILA provides remedies for inadequate disclosures, not for the charging of unlawful fees. Accordingly, the court concludes -- from a review of the face of the Amended Complaint -- that Plaintiff's TILA count is time-barred and is due to be dismissed.

## I.     Plaintiff's RESPA Count (Count Eleven) Presents Nothing More than Conclusory Allegations About the Purported QWRs

In Count Eleven of the Amended Complaint, Plaintiff alleges that Defendants Chase and Seterus violated the RESPA by failing to acknowledge receipt of his QWRs and not responding

---

[4] To be clear, Plaintiff has not argued that the statute of limitations is subject to equitable tolling in this instance. *Cf. Velardo*, 298 F. App'x at 892 (explaining when equitable tolling of TILA's statute of limitations is available). Indeed, Plaintiff has not responded to Chase's timeliness argument at all in his opposition brief. (*See* Doc. # 40 at 25-28). Moreover, while Plaintiff refers to the right of rescission under the TILA in his opposition briefs (Docs. # 39 at 33; 40 at 25), the Amended Complaint contains no rescission claim. (*See* Doc. # 22 at ¶¶ 99-109).

to the QWRs. (Doc. # 22 at ¶ 113). He offers the following description of the QWRs sent to Chase and Seterus:

> Rice made a [QWR] pursuant to RESPA to Chase Bank on August 20, 2015[,] December 15, 2015, [January 15], 2016, and January 29, 2016[,] which were sent by first class mail to Chase Bank. The QWRs were made in writing properly addressed to the address noted [on] the Plaintiff's monthly statement for sending such correspondence, and included the proper identifying information of the borrower[,] which included Rice's full names, his appropriate account number, and his address. The QWRs included a statement of the reasons for Rice believing that there was an error regarding his mortgage loan account and included sufficient details for Chase to respond to the request. Rice made [QWRs] pursuant to RESPA to Defendant Seterus on February 25, 2016, May 8, 2016, [ ] November 15, 2016, January 12, 2017, and February 5, 2017[,] which [were] sent by first class mail. The QWRs were made in writing properly addressed to the address noted [in] the Plaintiff's monthly statement for sending such correspondence, and included the proper identifying information of the borrower[,] which included Rice's full names, his appropriate account number, and his address. The QWRs included a statement of the reasons for Rice believing that there was an error regarding his mortgage loan account and included sufficient details for Seterus to respond to the request.

(*Id.* at ¶ 112). Plaintiff alleges that the RESPA violations harmed him by depriving him of a proper accounting, forcing him to retain an attorney to stop the foreclosure, forcing him to file a lawsuit, and causing clients to no longer hire him. (*Id.* at ¶ 114). Defendants argue that the proffered allegations fail to plausibly show that Plaintiff submitted a QWR. (Docs. # 30 at 10-12; 33 at 20-21). Defendant Chase also argues that Count Eleven fails to plead actual damages linked to the failures to respond to the QWRs. After careful review, the court finds Plaintiff's RESPA allegations insufficient.

The RESPA sets forth the procedures that a loan servicer must follow, and certain actions that it must take, upon receiving a QWR from a borrower. *See* 12 U.S.C. § 2605(e). The RESPA defines a QWR as follows:

> [A] qualified written request shall be a written correspondence, other than notice on a payment coupon or other payment medium supplied by the servicer, that—

(i) includes, or otherwise enables the servicer to identify, the name and account of the borrower; and

(ii) includes a statement of the reasons for the belief of the borrower, to the extent applicable, that the account is in error or provides sufficient detail to the servicer regarding other information sought by the borrower.

12 U.S.C. § 2605(e)(1)(B). Section 2605(e) of the RESPA requires a loan servicer to send a written acknowledgement of the borrower's QWR within five days and a written response to the QWR within 30 days. *Id.* § 2605 (e)(1)(A), (e)(2). A loan servicer that fails to adequately respond to a QWR "shall be liable to the borrower for each such failure in . . . an amount equal to the sum of any actual damages to the borrower as a result of the failure . . . ." *Id.* § 2605(f)(1)(A).

Ultimately, to succeed on a claim under § 2605(e), Plaintiff "must show: (1) that Defendant is a servicer; (2) that Defendant received a QWR from the borrower; (3) that the QWR related to the servicing of the loan; (4) that Defendant failed to respond adequately; and (5) that Plaintiff[ is] entitled to actual or statutory damages." *Buckentin v. SunTrust Mortg. Corp.*, 928 F. Supp. 2d 1273, 1292 (N.D. Ala. 2013). In several cases, federal district courts in Alabama have required plaintiffs bringing claims based on inadequate responses to QWRs to either attach the QWR to the complaint or plead facts that show that the written request included the information required by § 2605(e). *See, e.g.*, *Collins*, 2016 WL 6776284, at *4; *Zanaty v. Wells Fargo Bank, N.A.*, 2016 WL 6610443, at *9 (N.D. Ala. Nov. 9, 2016); *Patrick v. CitiFinancial Corp., LLC*, 2015 WL 3988860, at *3 (M.D. Ala. June 30, 2015); *Tallent v. BAC Home Loans*, 2013 WL 2249107, at *3 (N.D. Ala. May 21, 2013). For example, in *Collins*, the court found that the RESPA claim failed to plausibly allege that a communication constituted a QWR because the plaintiffs offered no allegation discussing the "content of the alleged QWRs." *Collins*, 2016 WL 6776284, at *4.

Here, the court concludes that the Amended Complaint offers nothing more than a conclusory allegation that Plaintiff submitted qualifying QWRs to Chase and Seterus. Although Plaintiff pleads that his written communications met all of the elements for a QWR, these allegations must be regarded as conclusory because Plaintiff offers no detail whatsoever about the contents of those communications. *See Collins*, 2016 WL 6776284, at *4. Moreover, Plaintiff's opposition briefs present no information about the contents of the purported QWRs and do not respond to Defendants' argument that the allegations concerning the QWRs are conclusory in nature.[5] (Docs. # 39 at 35-37; 40 at 28-30). Accordingly, Plaintiff's RESPA claim is due to be dismissed without prejudice due to his failure to plead non-conclusory allegations plausibly showing that the communications at issue met the requirements for a QWR.[6]

### J. Plaintiff's FCRA Claim (Count Twelve) Merely Offers Conclusory Allegations About the Communications from Credit Bureaus to Defendants

In Count Twelve of the Amended Complaint, Plaintiff claims that Defendants Chase and Seterus, as furnishers of credit information, violated the FCRA by conducting no investigation into complaints about inaccurate account information that the credit bureaus reported to them. (Doc. # 22 at ¶¶ 116-17). According to Plaintiff, Chase and Seterus did not respond to the credit disputes and did not change the incorrect account information. (*Id.* at ¶ 117). Defendants argue that the FCRA claim must be dismissed because Plaintiff has not pled "facts demonstrating which credit bureau notified which Defendant of what dispute in what month, or how Plaintiff

---

[5] As in *Collins*, Plaintiff's opposition briefs merely explain why a mortgage holder can be held vicariously liable for a servicer's RESPA violation, and they do not respond to either argument actually raised by Defendants for dismissing the RESPA claim. (Docs. # 39 at 35-37; 40 at 28-30). *See also Collins*, 2016 WL 6776284, at *4 (describing a similar deficiency in briefs submitted by Plaintiff's counsel in that case).

[6] Because Plaintiff's Amended Complaint fails to provide non-conclusory allegations about the contents of the purported QWRs, the court need not decide (and does not decide) whether the RESPA count is due to be dismissed for failure to plead actual damages. Unlike many of the cases cited by Defendants, Plaintiff's Amended Complaint references expenses he undertook to prevent foreclosure when he received insufficient information about his mortgage loan account.

even has knowledge of any Defendant's receipt of his purported written disputes." (Docs. # 30 at 12-13; 33 at 21-22)

"The FCRA imposes two separate duties on furnishers. First, [15 U.S.C.] § 1681s-2(a) requires furnishers to submit accurate information to [credit reporting agencies]. Second, § 1681s-2(b) requires furnishers to investigate and respond promptly to notices of [consumer] disputes." *Green v. RBS Nat'l Bank*, 288 F. App'x 641, 642 (11th Cir. 2008). But, the FCRA only provides a private right of action for violations of § 1681s-2(b), and only when "the furnisher received notice of the consumer's dispute from a consumer reporting agency." *Peart v. Shippie*, 345 F. App'x 384, 386 (11th Cir. 2009); *Green*, 288 F. App'x at 642. While it is a close call, after careful review of Count Twelve, the court concludes that the FCRA claim is due to be dismissed for substantially the same reason as Plaintiff's RESPA claim. That is, Plaintiff's Amended Complaint offers nothing more than conclusory allegations that the credit bureaus notified Chase and Seterus about Plaintiff's disputes. (Doc. # 22 at ¶ 117). The Amended Complaint fails to explain which credit bureau reported the disputes to which Defendant or the subject matter of the disputes. (*See id.*). *See also Collins*, 2016 WL 6776284, at *4 (dismissing FCRA claim without prejudice where the claim was raised against multiple defendants and covered a three-year period). Accordingly, Plaintiff's FCRA claim is due to be dismissed without prejudice.

### K. Leave to Amend

Throughout his opposition briefs, Plaintiff requests leave to file a Second Amended Complaint to address any insufficiencies in the First Amended Complaint. Notably, Plaintiff does not specify what additional allegations he would make in a Second Amended Complaint. Nevertheless, the court finds that Plaintiff might be able to present a plausible RESPA or FCRA

claim if granted leave to file a Second Amended Complaint. Unless Plaintiff can explain why it would not be futile to do so, the court will not grant Plaintiff leave to amend any of the other dismissed claims.

**V.      Conclusion**

For the reasons explained above, the court concludes that Defendants' Motions to Dismiss (Docs. # 30, 33) are due to be granted in part and denied in part. Counts One, Two, Four, Five, Seven, Eight, Ten, Eleven, and Twelve of the Amended Complaint are due to be dismissed without prejudice. Nevertheless, Plaintiff will be granted leave to file a Second Amended Complaint, within twenty-one (21) days, if he wishes to provide additional allegations to support the RESPA and FCRA claims in Counts Eleven and Twelve. In all other respects, Defendants' Motions to Dismiss are due to be denied. An Order consistent with this Memorandum Opinion will be entered.

**DONE** and **ORDERED** this January 23, 2018.

**R. DAVID PROCTOR**
UNITED STATES DISTRICT JUDGE